# IN THE COURT OF APPEALS OF IOWA

No. 17-1184
Filed September 27, 2017

**IN THE INTEREST OF M.C.,**
**Minor Child,**

**K.S., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, DeDra L. Schroeder, Judge.

The mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2017). **AFFIRMED.**

Jane M. Wright, Forest City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Crystal L. Ely of North Iowa Youth Law Center, Mason City, guardian ad litem for minor child.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**MCDONALD, Judge.**

The juvenile court terminated Kelly's parental rights in her child, M.C., pursuant to Iowa Code section 232.116(1)(e) and (h) (2017). On appeal, Kelly argues: (1) there was not clear and convincing evidence to terminate her rights pursuant to section 232.116(1)(e); (2) the Iowa Department of Human Services (IDHS) failed to make reasonable efforts towards reunification; (3) the juvenile court should have granted a six-month extension of time to work toward reunification; (4) termination of Kelly's parental rights was not in the best interest of M.C.; and (5) the juvenile court should have preserved the parent-child relationship pursuant to section 232.116(3).

I.

We review de novo proceedings terminating parental rights. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The legal framework for termination appeals is well established and need not be repeated in full herein. *See id.*; *In re M.W.,* 876 N.W.2d 212, 219–20 (Iowa 2016) (stating review is de novo and setting forth the applicable "three-step inquiry").

A.

Kelly first challenges the sufficiency of the evidence supporting termination of her parental rights pursuant to Iowa Code section 232.116(1)(e). But she does not challenge the sufficiency of the evidence authorizing termination of her parental rights pursuant to section 232.116(1)(h). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

We conclude there is clear and convincing evidence supporting the termination of Kelly's rights pursuant to section 232.116(1)(h).  As relevant here, the State must prove the child cannot be returned to the custody of the child's parent at the time of the termination.  *See* Iowa Code 232.116(1)(h)(4).  To make this determination, we ask if the child would remain a child in need of assistance or would be exposed to harm amounting to a new child-in-need-of-assistance adjudication.  *See id.*; *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).  "We have interpreted this to require clear and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing."  *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

IDHS has been involved with this family for some period of time with little success in resolving the issues giving rise to State intervention.  Kelly is the biological mother of A.C. and M.C.  A.C. was removed from Kelly's care in October 2015, shortly after A.C. tested positive for controlled substances.  M.C. was born in July 2016.  Like A.C., M.C. tested positive for controlled substances. M.C. was removed from Kelly's care two days after birth and placed in the same foster home as A.C. and has resided there since birth.  Despite the receipt of numerous services, Kelly failed to show the ability to provide care for her children, and her rights in A.C. were terminated in September 2016.  This court affirmed the termination of parental rights.  *See In re A.C.*, No. 16-1636, 2017 WL 512732, at *1 (Iowa Ct. App. Feb. 8, 2017).

As in many child-welfare cases, the primary obstacle to reunification is the use and abuse of controlled substances.  Kelly has an extensive history of

involvement with controlled substances. In August 2016, the Northern Iowa drug task force found eight bags of methamphetamine, eight bags of marijuana, and drug paraphernalia in the home Kelly shared with M.C.'s father, Seth. She pleaded guilty to two counts of possession of methamphetamine and marijuana in January 2017 and was sentenced to one year of probation. Both of her children tested positive for controlled substances at birth. She has been unsuccessfully discharged from several substance-abuse treatment programs over the life of this case. She most recently left inpatient treatment, against the recommendation of her substance-abuse counselor in May 2017. She tested positive for methamphetamine and marijuana in April and May 2017, shortly prior to the termination hearing. While Kelly did complete a short inpatient program immediately prior to the termination hearing in this case, she has not demonstrated an ability to maintain sobriety outside of custodial setting for any meaningful period of time. Kelly's substance abuse supports the termination of her parental rights. *See, e.g., In re A.B.*, 815 N.W.2d at 776 (noting drug addiction can render a parent unable to care for children); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights of parent with history of drug abuse); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights when parent had history of substance abuse).

Kelly also admittedly cannot provide for the basic needs of the child. She lacks employment and financial security. She lacks safe and appropriate housing which has been a significant detriment in her reunification efforts. After Seth was incarcerated, Kelly began living at the home of her friend. Kelly's friend

was a known drug user who had rights in her child terminated in 2016. In late May 2017, Kelly moved from this home into the home of Seth's uncle. But Kelly still spends most of her time at her friend's home. This also places M.C. at risk of appreciable harm if returned to Kelly's care. *See In re M.W.*, 876 N.W.2d at 223 (inappropriate housing and inconsistent employment "reflect[] [a mother's] prior pattern of irresponsibility and lack of planning when it comes to her children"); *In re R.C.*, No. 03-1134, 2003 WL 22092677, at *2 (Iowa Ct. App. Sept. 10, 2003) (finding among other factors, a father's "history of unstable housing and employment" provided "evidence beyond a reasonable doubt" that the child could not be placed in his care).

Little has changed since the prior appeal in which we affirmed the termination of Kelly's parental rights in A.C. There is clear and convincing evidence supporting the statutory ground authorizing the termination of Kelly's parental rights.

B.

Kelly contends the State failed to make reasonable efforts towards reunification. As part of its ultimate proof, the State must establish it made reasonable efforts to return the child to the care of the parent to proceed with termination. *See* Iowa Code § 232.102(9). This requires IDHS to make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." *Id.* Reasonable efforts "facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). "[W]hat

constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).

Kelly has not preserved her challenge to the efforts made in this case. On appeal, Kelly has not identified any specific service that should have been offered to facilitate reunification. Nor has she identified any particular deficiency in the services offered. In the juvenile court, Kelly did not request additional services. Nor did she identify any particular deficiency in the services offered. "We have repeatedly emphasized the importance for a parent to object to services early in the process so appropriate changes can be made." *In re C.B.*, 611 N.W.2d 489, 493–94 (Iowa 2000). "If . . . a parent is not satisfied with [I]DHS' response to a request for other services, the parent must come to the court and present this challenge." *In re C.H.*, 652 N.W.2d at 147; *see In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (concluding it is a parent's responsibility to demand other, different, or additional services in order to preserve error); *see also* Iowa Code § 232.99(3). The failure to request different or better services in the juvenile court proceeding waives any challenge to the department's efforts on appeal.

Independently, even if the issue were presented for appellate review, we conclude the department made reasonable efforts to facilitate reunification. Kelly was offered therapy referrals; mental-health evaluations; substance-abuse evaluations; visitation; family safety, risk, and permanency services; drug testing; family team meetings; housing assistance; a parent partner; transportation assistance; family-preservation court; and employment assistance. This is not a

case where the department failed to make reasonable efforts; this is a case where the mother failed to avail herself of the services offered.

C.

Kelly argues in light of her recent treatment progress, she is entitled to six more months to reunify with M.C. pursuant to Iowa Code section 232.104(2)(b). Pursuant to section 232.104(2)(b), the juvenile court may enter an order deferring permanency upon a finding the need for the child's removal will no longer exist at the end of the additional six-month period. Iowa Code § 232.104(2)(b). The court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination" the need for removal will no longer exist at the end the extension. *Id.* In determining whether to grant six additional months, "[t]he court may look at a parent's past performance." *In re T.D.H.*, 344 N.W.2d 268, 269 (Iowa Ct. App. 1983). In considering whether deferral is proper, "[t]he judge considering [an extension] should . . . constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the child[] in a better home." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

There is no basis in this record to conclude removal would no longer be necessary at the end of the six-month period. Kelly has a long history of methamphetamine and marijuana use. She has completed treatment and relapsed before, including during termination proceedings for her older child. *See In re A.C.*, 2017 WL 512732, at *1. Her past behavior gives little reason for optimism. See *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) (stating "we must consider the treatment history of the parent to gauge the likelihood the

parent will be in a position to parent the child in the foreseeable future"); *T.D.H.*, 344 N.W.2d at 269. Kelly's last-minute improvements are simply not enough to demonstrate a reasonable likelihood of sustained success. *See In re D.R.*, No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016) (affirming termination where "mother's late progress in the case did not begin until after the State filed its petition seeking termination of parental rights"); *In re A.D.*, No. 15-1508, 2016 WL 902953, at *2 (Iowa Ct. App. Mar. 9, 2016) ("Iowa courts look skeptically at 'last-minute' attempts to address longstanding issues, finding them inadequate to preclude termination of parental rights.").

D.

Kelly argues termination of her parental rights was not in the best interest of M.C. She notes she has been an appropriate caregiver during supervised visitation and claims "[t]here was no evidence presented by the State that M.C. has become integrated into the foster family to the extent that the child's familial identify is with the foster family." "When considering a child's best interests, we 'give primary consideration to the child's safety, to the best placement for furthering the long term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re M.T.*, No. 14-2133, 2015 WL 1055518, at *2 (Iowa Ct. App. Mar. 11, 2015) (quoting Iowa Code § 232.116(2)).

When we consider what placement facilitates the healthy development of the child, we have little trouble concluding termination of Kelly's rights is in the best interest of the child. As noted above, Kelly exposed the child and the child's older sibling to controlled substances. She has long struggled with addiction and

has not demonstrated any capacity to maintain sobriety outside a custodial setting. Kelly's substance abuse, among other things, has prevented her from maintaining employment and being able to meet the child's most basic needs for food, clothing, and shelter. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d at 777; *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). We find this argument without merit.

## E.

Kelly argues the statutory exceptions set forth in Iowa Code section 232.116(3) make termination improper in this case. Specifically, she claims "there is clear and convincing evidence that the termination would be detrimental to the child . . . due to the closeness of the parent-child relationship" pursuant to section 232.116(3)(c). "The factors weighing against termination in section 232.116(3) are permissive, not mandatory." *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). The appropriate inquiry is whether the harms associated with termination outweigh the benefits to the child. *See In re C.L.*, No. 14-1973, 2015 WL 408392, at *3 (Iowa Ct. App. Jan. 28, 2015).

M.C. is a young child who has been out of Kelly's care since birth. Kelly has exercised regular visitation with the child over the life of this case. The evidence showed Kelly was appropriate during the visitations. However, Kelly never progressed past supervised visitation. In addition, Kelly's caseworker testified she has no more than a "caregiver" relationship with M.C. She does not have a strong bond with this child, and the child does not have a strong bond

with Kelly. M.C. looks to the foster parents for comfort and security. We decline to exercise this permissive consideration to preserve the parent-child relationship.

II.

For the foregoing reasons, we affirm the termination of Kelly's parental rights in M.C.

**AFFIRMED.**